1  KEVIN I. SHENKMAN (SBN 223315)
   kshenkman@shenkmanhughes.com
2  **SHENKMAN & HUGHES**
   28905 Wight Rd.
3  Malibu, California 90265
   (310) 457-0970
4
   Attorneys for Plaintiffs and
5
6  Counter-Defendant
7
8              UNITED STATES DISTRICT COURT
9         CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
10

| | |
|---|---|
| VAHAN EKSOUZIAN, an individual; CLOUD V ENTERPRISES, a California corporation; and VAPE A CLOUD, INC., a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> BRETT ALBANESE, an individual; CLOUD VAPEZ, INC. a California corporation; and DOES 1 through 100. <br><br> Defendants. | CASE NO. CV-13-00728 PSG (MANx) <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT** <br><br> [Motion to be heard by Hon. Margaret Nagle, pursuant to Order (Docket # 91)] |

AND RELATED COUNTERCLAIMS

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

FILED
CLERK U.S DISTRICT COURT
AUG - 6 2015
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

## I. INTRODUCTION

This Motion requests that the Court specifically enforce the Settlement Agreement executed by the parties on July 9, 2014 (the "Settlement Agreement"). The terms of the Settlement Agreement were not only agreed to by the parties after extensive negotiations involving the mediation efforts of the Court, but, following execution of the Settlement Agreement by the parties, the Court also incorporated the terms of the Settlement Agreement in the Court's order dated August 6, 2014 (the "Court's Order") and, at the request and by the mutual consent of the parties, the Court expressly retained jurisdiction to enforce the Settlement Agreement. *See* Court's Order [Docket No. 91].

None of these formalities, or the Court's authority, appear to have convinced Defendants to take their obligations under the Settlement Agreement seriously. Indeed, since the execution of the Settlement Agreement on July 9, 2014, Defendants have persisted in materially breaching the Settlement Agreement in multiple ways – most of which result in damages that are difficult to quantify. For example,

- Defendants agreed to discontinue using the mark "Cloud 2.0", or any derivation thereof. Settlement Agreement, ¶ II.A. This was intended to stop the damage that defendants and their false advertising had caused to plaintiffs' business. Yet, as the screenshots attached to the declaration of Michael Hesser show, defendants have persisted in using the mark "Cloud 2.0", both on their website and on their products.
- Likewise, for the same reasons, Defendants agreed to discontinue using the mark "Cloud," or any derivation thereof, except in combination with another word as a unitary mark. Settlement Agreement, ¶ II.A. Yet, as the screenshots attached to the declaration of Michael Hesser show, defendants have persisted in using the mark "Cloud", both on

their website and on their products, alone and not as a unitary mark with another word.

- Defendants also promised to remove a certain video in which two men referred to as B-Real and Gil promote defendants' products (Settlement Agreement, ¶ II.E); yet, defendants persisted in featuring the video on defendants' website.

- Defendants agreed to promptly dismiss their opposition to plaintiffs' registration of the marks "Cloud", "CloudV", and "CloudVapes" before the Trademark Trial and Appeal Board (Settlement Agreement, ¶ II.A); they delayed doing so until August 13, 2014 – more than a month after execution of the Settlement Agreement.

- Finally, defendants agreed to promptly transfer the domain name www.cloudvapez.com, which defendant Brett Albanese had misappropriated while acting in a fiduciary capacity on behalf of plaintiffs. Settlement Agreement, ¶ II.F. They have failed to do so.

***In short, virtually the <u>only</u> material term of the Settlement Agreement that the defendants have complied with thus far has been the payment of the initial settlement payment of $35,000.*** Frankly, given the unquantifiable damage to plaintiffs' business and the correlative unfair competitive advantage derived by Defendants from their continued use of plaintiffs' marks, the importance of the settlement payments pale in comparison to the importance of Defendants' compliance with the terms of the Settlement Agreement designed to prevent Defendants from capitalizing on and damaging Plaintiffs' marks and other goodwill.

Plaintiff is entitled to a decree of specific performance in this case. Given what were Plaintiffs' legitimate concerns about Defendants' compliance with the terms of the Settlement Agreement, the Court (1) made the terms of the Settlement Agreement part of the Court's order of dismissal dated August 6, 2014 [Docket No.

91] (the "Court's Order"); and (2) retained jurisdiction over the enforcement of the Settlement Agreement, specifically ordering that Magistrate Judge Margaret A. Nagle would decide any enforcement issues arising under the Settlement Agreement. The terms of the Settlement Agreement are governed by California law, which permits specific enforcement of contracts under circumstances, such as the ones presented here, in which monetary damages under a fair, adequate, and reasonable contract with definite terms would be inadequate. The Court approved the Settlement Agreement in this case. It was fair, reasonable and adequate. The terms that Plaintiffs seek to enforce are definite. Unfortunately, Defendants continued use of Plaintiffs' marks and other good will are difficult to value. This is the classic case justifying a decree of specific enforcement.

Therefore, plaintiffs respectfully request that the Court issue a decree specifically enforcing the Settlement Agreement, and ordering that defendants: (1) shall within 24 hours remove all references to the terms "Cloud", "Cloud 2.0", "Cloud Vapez", or any similar derivations thereof from any internet websites and social media owned, operated, sponsored, authored, or controlled by Defendants or anyone acting on Defendants' behalf and from all products offered or advertised for sale by Defendants or anyone acting in concert with Defendants; (2) shall within 48 hours transfer the domain name www.cloudvapez.com to Plaintiff Cloud V Enterprises; and (3) shall within 24 hours remove the video, and any screenshots thereof, in which B-Real and Gil promote Defendants' products from any internet websites and social media owned, operated, sponsored, authored, or controlled by Defendants or anyone acting on Defendants' behalf.

///
///
///
///

## II. STATEMENT OF FACTS

### A. Underlying Case, Mediation Efforts, and Settlement Agreement

On February 2, 2013, Plaintiffs Vahan Eksouzian, Cloud V Enterprises, and Vape A Cloud, Inc. sued defendants Brett Albanese and Cloud Vapez, Inc. (collectively, "Defendants") on various claims for relief stemming from Mr. Albanese's breach of a joint venture agreement (the "Joint Venture") with Vahan Eksouzian and counterderfendant Mohammed Nurhussein. *See* Complaint [Docket No. 1]. Under the terms of the Joint Venture Agreement, Messrs. Eksouzian, Nurhussein, and Albanese agreed to manufacture, market, and sell a compact vaporizer that Mr. Eksouzian had developed. *Id.*, ¶¶ 12-24. Mr. Albanese had been impressed with the vaporizer, and represented that he had numerous contacts and outlets for its sale. *Id.* He agreed to act as an officer of plaintiff Vape A Cloud, and his primary responsibilities included obtaining domain name registrations for the Joint Venture, and marketing the Joint Venture's vaporizer products. *Id.* Instead, he used his position of trust to obtain domain names for a competing business using confusingly similar names, copied packaging materials, and began selling an inferior competing project under the label "Cloud 2.0." *Id.* Plaintiffs First Amended Complaint sought relief from Mr. Albanese and his entities' use of Plaintiffs' marks "Cloud", CloudV", and "CloudVapes", and any variations thereon. *Id.* In addition, Plaintiffs sought to prevent Mr. Albanese and his entities from making false representations, including implying that his products were the "2.0" version of Plaintiffs' products; from contesting Plaintiffs' use of their marks; and from using misappropriated domain names, such as www.cloudvapez.com, which was obtained by Mr. Albanese while acting as a fiduciary for Plaintiffs. *Id.*

As the Court is well aware, the parties engaged in extensive settlement negotiations in which Magistrate Judge Nagle served as mediator. This gave Judge Nagle a unique insight into the preparation, terms, and construction of the

Settlement Agreement that ultimately resulted from significant settlement discussions. It also gave Judge Nagle a unique insight into the difficulties that Plaintiffs faced in dealing with Defendants, including the importance of being able to enforce compliance with terms of the Settlement Agreement which could not be readily compensated in monetary damages, such as terms requiring Defendants to cease using the marks "Cloud", "CloudV", "CloudVapes", and any other derivations thereof.

At the conclusion of the negotiations and several rounds of drafting the Settlement Agreement, the parties executed the Agreement on July 9, 2014. (Shenkman Decl. ¶ 2, Ex. A). Specifically because of the concerns about Defendants' compliance with the requirements of the Settlement Agreement having to do with Defendants' misappropriation and infringement of Plaintiffs' marks, domain names, and other deceptive business practices, Plaintiffs insisted, and Defendants agreed, that the terms of the Settlement Agreement would be incorporated into the Court's order dismissing the action and that the Court, and specifically Magistrate Judge Nagle, would be asked to retain jurisdiction to enforce the Settlement Agreement. *Id.*, ¶ 3 Ex. A. The Defendants insisted, and Plaintiffs agreed, that the Settlement Agreement would be kept confidential and would be filed under seal. *Id.*, ¶ 4, Ex. A. The Court agreed, and, subsequently, the Court issued an order on August 6, 2014 (the "Court's Order"), in which the Court incorporated the terms of the Settlement Agreement as part of the dismissal order, and retained jurisdiction to enforce the terms of the Settlement Agreement. *See* Court's Order [Docket No. 91].

**B.     Defendants' Numerous Breaches of the Settlement Agreement**

Plaintiffs' concerns regarding Defendants' compliance with the terms of the Settlement Agreement have proven well-founded. Indeed, since executing the Settlement Agreement on July 9, 2014, the Defendants have failed and refused to

comply with the terms requiring Defendants to cease using Plaintiffs' marks, engaging in deceptive advertising, and retaining Plaintiffs' domain names. Shenkman Decl., ¶ 2, Ex. A; Declaration of Michael Hesser ("Hesser Decl."), ¶¶ 2-5, Exs. A-K.

### 1. Defendants Continue Using the Term Cloud Standing Alone on Their Website in Breach of Paragraph II.A. of the Settlement Agreement.

As an initial matter, Defendants have continued to breach the Settlement Agreement by using the term "Cloud" (standing alone, or not in combination with another term as a unitary mark), and the term "Cloud 2.0". These terms are associated with Plaintiffs' products – the "Cloud" vaporizer sold by Plaintiffs since the middle of 2012. Their importance to Plaintiffs was demonstrated by their appearance as the first covenants in the Settlement Agreement; Paragraph II.A. of the Settlement Agreement states:

> A. ***Defendants***, and each of them, ***shall cease using the phrase "Cloud 2.0," "Cloud Vapes," or "Cloud" (except in combination with another word as a unitary mark as set forth below), or any similar derivation thereof (for example, "Cloud 2," "Cloud 3.0," or "Cloud Vapez"), in association with any of Defendants' products***. Defendants shall not use, or participate with any third-party use, apply to register or secure or maintain any registration, or cooperate in any effort to register or secure or maintain any registration, for any mark or domain name containing said marks or any similar derivation thereof, for any goods or services, in any jurisdiction in the world, whether alone or in combination with any other

> name(s), mark(s), term(s), word(s), symbol(s), number(s), designation(s), device(s), logo(s) and/or design(s). Defendants shall not oppose the registration of the marks "Cloud," "CloudV," and "CloudVapes," and shall promptly file a request for dismissal of Opposition No. 91217180 pending before the Trademark Trial and Appeal Board.

Settlement Agreement, ¶ II.A. (emphasis added). Paragraph II.C. of the Settlement Agreement further provides that "Defendants will not use the term "Cloud" standing alone in commerce as a mark." Settlement Agreement, ¶ II.C. Finally, the Settlement Agreement provides guidance on the parties' understanding of the term "unitary trademark," taking the definition from the Trademark Manual of Examining Procedure, published by the United States Patent and Trademark Office:

> Specifically, in this context "unitary trademark" means a group of words or symbols ***that are considered a single trademark, that is, where the elements are so closely aligned and situated that the average consumer would view the group of words or symbols as a single trademark***.

Settlement Agreement, ¶ II.B. (emphasis added).

Defendants have breached this covenant in at least two ways. First, Defendants have continually used the term "Cloud" standing alone – both on its website and on its products. *See* Hesser Decl., ¶¶ 2-4, Exhibits A-J. In other words, despite entering into the Settlement Agreement, Defendants are still trading on the "Cloud" mark, which belongs to Plaintiffs and which has become associated with Plaintiffs' products. Defendants are not allowed to use this mark, except in combination with other words displayed in a manner that constitutes a "unitary

mark". Settlement Agreement, ¶¶ II.A., II.C. Still, they are using it either by itself or in conjunction with other words that do not comprise "unitary marks". *See* Settlement Agreement, ¶ II.B. (in order for "Cloud" to be part of another "unitary" mark, it must be "so closely aligned and situated that the average consumer would view the group of words or symbols as a single trademark").

Second, Defendants also persist in breaching the Settlement Agreement by using the term "Cloud 2.0", both on their websites and their "pen" vaporizers. *See* Hesser Decl., ¶¶ 2-4, Exhibits A-J. Again, this is something that Plaintiffs specifically bargained for in the Settlement Agreement, because the use the term "Cloud 2.0" implies that Defendants are selling upgraded versions of Plaintiffs' products, rather than the inferior products developed by Defendants. The Settlement Agreement clearly prohibits Defendants' use of the term "Cloud 2.0" on both its website and on its products. Settlement Agreement, ¶ II.A.

Finally, Defendants have also materially breached Paragraph II.A. of the Settlement Agreement by failing to promptly dismiss their opposition to Plaintiffs' registration of its marks "Cloud", "CloudV", and "CloudVapes". In addition to prohibiting Defendants' use of the marks "Cloud", "Cloud 2.0", and other similar marks, Paragraph II.A. of the Settlement Agreement provides:

> Defendants shall not oppose the registration of the marks "Cloud," "CloudV," and "CloudVapes," and **shall *promptly* file a request for dismissal of Opposition No. 91217180 pending before the Trademark Trial and Appeal Board.**

Settlement Agreement, ¶ II.A. (emphasis added). Although Defendants entered into the Settlement Agreement on July 9, 2014, they did not request dismissal of their Opposition No. 91217180 until more than a month later. Shenkman Decl., ¶ 5, Ex. B. Defendants' delay has naturally resulted in a commensurate delay in the USPTO

issuing a registration for Plaintiffs' "Cloud Vapes" mark. As a result, Plaintiffs' efforts to prevent others from infringing on their intellectual property rights have been forestalled. Shenkman Decl., ¶ 5.

### 2. Defendants Continued Using and Displaying the B-Real and Gil Video on Defendants' Website after Entering into the Settlement Agreement.

Defendants also materially breached the Settlement Agreement by continuing to display a misleading video on their website long after entering the Settlement Agreement. Paragraph II.E. of the Settlement Agreement provides:

> E. The Parties shall not disparage one another, or otherwise make any false or misleading statements regarding any of the Parties' respective products or businesses. While Defendants do not control nor own the video in which B-Real and Gil promote Defendants' products and make no representations or warranties regarding the ongoing use of that video by those who do own or control such video, Defendants do warrant and represent that ***upon the execution of this agreement Defendants will remove the video from websites and social media that Defendants do control, and shall request that Weed Maps likewise remove the video as well***. Neither Plaintiffs nor Defendants shall advertise their products as the "real" or "original" Cloud vaporizer pen.

Settlement Agreement, ¶ II.E. (emphasis added).

Despite the clear terms of the Settlement Agreement, Defendants failed to remove the video "upon execution of this agreement" (Settlement Agreement, ¶

II.E). Hesser Decl., ¶ 4. Indeed, they continued to post the video, which falsely claims that Defendants' product is the "real" Cloud vaporizer. *Id.* Moreover, it is evident that Defendants have not requested that Weed Maps remove the video, because the video is still available at http://weedmaps.tv/product-reviews/item/b-real-and-gil-vape-cloud-penz. Shenkman Decl. ¶ 6.

### 3. Defendants Have Breached the Settlement Agreement by Failing to Transfer the Domain Name www.cloudvapez.com to Plaintiffs.

In addition to continuing to use prohibited marks and deceptive advertising, Defendants have also failed to turn over the domain name that Mr. Albanese misappropriated from Plaintiffs while still working for them. The Settlement Agreement specifically provides that Defendants will transfer the misappropriated domain name to Plaintiffs: "Defendants shall transfer the domain name www. Cloudvapez.com to Plaintiff Cloud V Enterprises." Settlement Agreement, ¶ II.E. Nearly two months after the execution of the Settlement Agreement, Defendants have still failed to carry through on this simple obligation. Shenkman Decl., ¶ 7. There is simply is no justification for delaying this long in performing an act that takes less than 20 minutes. Nearly two months after the execution of the settlement agreement, Defendants sought to excuse their unreasonable delay in transferring the domain name to Plaintiffs, contending that Plaintiffs had not provided unspecified information necessary for Defendants to transfer the domain name; but if that information was necessary, Defendants should have obtained it two months ago. When combined with Defendants' multiple other delays and outright breaches of the Settlement Agreement, the failure to comply with this obligation becomes part of a pattern of Defendants' blatant disregard for compliance with material terms of the Settlement Agreement, and their determination to continue unfairly competing with Plaintiffs.

### III. THIS COURT HAS JURISDICTION TO ENFORCE THE SETTLEMENT AGREEMENT.

Although federal courts are courts of limited subject matter jurisdiction, the Supreme Court has held that a federal district court may enforce a civil case settlement order where the court has either incorporated the terms of the settlement agreement into the dismissal order or has included a provision in the dismissal order retaining jurisdiction over the settlement agreement. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 38, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994). "In that event the breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.*

In the case of this Motion, both grounds of jurisdiction apply. The Court's dismissal Order specifically incorporates the terms of the Settlement Agreement. Court's Order [Docket No. 91]. Furthermore, the parties agreed, and the Court ordered, that the Court would retain jurisdiction over the enforcement of the Settlement Agreement. *Id.*

### IV. PLAINTIFFS ARE ENTITLED TO A DECREE OF SPECIFIC PERFORMANCE.

#### A. Legal Standards

Plaintiff is entitled to a decree of specific performance under the circumstances presented here. When a district court enforces a settlement agreement, local contract law governs issues regarding the formation, construction, and enforceability of the settlement agreement. *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000). In this case, the Settlement Agreement specifically provides that it is to be enforced under the laws of California. Settlement Agreement, ¶ VI.A. Under California law, the remedy of specific performance is available to enforce a contract whenever a plaintiff establishes (1) the inadequacy of its legal remedy; (2) an underlying contract that is both reasonable and supported by

adequate consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial similarity of the requested performance to that promised in the contract. *Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575-76, 193 Cal. Rptr. 409, 411-12 (Cal. Ct. App. 1983); *see also Henderson v. Fisher* 236 Cal. App. 2d 468, 473, 46 Cal. Rptr. 173 (Cal. Ct. App. 1965); Civ. Code, §§ 3384, 3386, 3390, 3391 (West 2014).

In this case, elements (2) through (5) are readily apparent from the facts of this Motion. The Settlement Agreement, as the Court knows, was negotiated at length by the parties and represented a fair agreement under the facts in this action. Defendants were fully represented by counsel at all times, and Defendants received the consideration for which they bargained, namely the dismissal of the action and the use of certain marks, as well as Plaintiffs' agreement to refrain from using certain marks. *See* Settlement Agreement, ¶ II.B. Both parties have the same remedies available under the Settlement Agreement. The Settlement Agreement, and certainly the terms that have been breached by Defendants, are sufficiently definite to enable enforcement, and the remedies requested in this Motion are substantially similar to the promises that Defendants made in the Settlement Agreement.

### B. Legal Remedies Would Be Inadequate to Compensate Plaintiffs for Defendants' Continuing Use of Plaintiffs' Marks and Other Goodwill.

There is also little question that, under California law, Plaintiffs lack an adequate legal remedy. California courts have consistently held that where monetary damages are uncertain or difficult to ascertain, the requirement of inadequate legal remedy is met for specific performance. *See Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575-76, 193 Cal.

Rptr. 409, 411-12 (Cal. Ct. App. 1983) (intangible value of actor's credits justified specific performance where value of such credits would be difficult to ascertain).

In this case, the monetary damages resulting from Defendants' continued use of marks prohibited under the Settlement Agreement would be difficult to ascertain. Even if Plaintiffs were to engage in extensive discovery or hire experts, the extent to which consumers are influenced by Defendants' continuing use of Plaintiffs' marks on their websites and products could only be ascertained, if at all, with great difficulty and at great expense. Likewise, Defendants' disparagement of Plaintiffs' products through the use of deceptive videos is difficult, if not impossible, to ascertain. Defendants' continued misappropriation of Plaintiffs' website www.cloudvapez.com is also difficult to value.

In short, Plaintiffs are entitled to a decree of specific performance ordering that Defendants' take their obligations under the Settlement Agreement seriously, and comply with their obligations fully and promptly.

## V. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court find that Defendants have breached the Settlement Agreement, and issue a decree specifically enforcing the Settlement Agreement, ordering that Defendants: (1) shall within 24 hours remove all references to the terms "Cloud", "Cloud 2.0", "Cloud Vapez", or any similar derivations thereof, from any internet websites and social media owned, operated, sponsored, authored, or controlled by Defendants or anyone acting in concert with Defendants and from all products offered or advertised for sale by Defendants or anyone acting in concert with Defendants; (2) shall within 48 hours transfer the domain name www.cloudvapez.com to Plaintiff Cloud V Enterprises; (3) shall within 24 hours remove the video in which B-Real and Gil promote Defendants' products from any internet websites and social media owned, operated, sponsored, authored, or controlled by Defendants or anyone acting in

concert with Defendants.

DATED: September 10, 2014

KEVIN I. SHENKMAN
SHENKMAN & HUGHES

By: _____
Kevin I. Shenkman
Attorneys for Plaintiffs VAHAN EKSOUZIAN; CLOUD V ENTERPRISES, INC. and VAPE A CLOUD, INC., and Counter-Defendant Mohammed Nurhussein