Bret D. Lewis, Esq. [SBN 166819]
12304 Santa Monica Blvd., Ste 107A
Los Angeles, CA 90025
Tel (310) 207-0696
Fax (310) 362-8424
Email: Bretlewis@aol.com
Attorney for Plaintiffs Full Circle Enterprises, LLC and Brett Albanese

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAHAN EKSOUZIAN, an individual; CLOUD V. ENTERPRISES, a California Corporation; VAPE A CLOUD, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> BRETT ALBANESE, an individual CLOUD VAPEZ, INC., a California corporation, and DOES 1 through 100. <br><br> Defendants. | Case No.: 2:13-00728 PSG (AJW) <br><br> **STIPULATION FOR ENTRY OF JUDGMENT** |

WHEREAS, on or around July 29, 2014, plaintiffs Vahan Eksouzian, Cloud V. Enterprises and Vape A Cloud, Inc. (collectively, "Plaintiffs"), on the one hand, and defendants Brett Albanese and Cloud Vapez, Inc., together with Full Circle Enterprises, LLC (collectively, "Defendants"), on the other hand, entered into a settlement agreement (the "Settlement Agreement") in the above-entitled action;

---

Stipulation for Entry of Judgment

1



WHEREAS, on or around August 6, 2014, the Court made the terms of the Settlement Agreement the Court's order (the "Court's August 6, 2014 Order") in this action, and retained jurisdiction to enforce the terms of the Settlement Agreement as an order of the Court in this action;

WHEREAS, on or about September 11, 2014, Plaintiffs moved the Court to reopen this action to enforce the Settlement Agreement and the Court's August 6, 2014 Order against Defendants;

WHEREAS, on March 2, 2015, the Court granted Plaintiff's motion to reopen this action to enforce the Settlement Agreement and the Court's August 6, 2014 Order against Defendants;

WHEREAS, on or around August 7, 2015, Magistrate Judge Nagle (the Court's August 7, 2015 Order") found that Defendants had violated the terms of the Settlement Agreement and ordered Defendants to comply with certain terms and conditions of the Settlement Agreement;

WHEREAS, on or around October 23, 2015 the Court granted Plaintiffs' motion for attorneys' fees and costs, in part, ordering Defendants to pay Plaintiffs $104,842.50 (the 'First Judgment");

WHEREAS, on or about November 30, 2015, Defendants moved the Court for an order finding Defendants in civil contempt of the Court's August 7, 2015 Order;

WHEREAS, on or around March 9, 2016 the Court granted Plaintiffs' motion for attorneys' fees and costs, in part, in the related case – *Full Circle Enterprises, LLC, et al. v. Eksouzian, et al.*, Case No. CV 15-1530 PSG (AJWx) – ordering Defendants to pay Plaintiffs $29,402.50 (the 'Second Judgment"; together with the First Judgment, the "Existing Judgments") for attorneys' fees and costs associated with that case.

WHEREAS, to date, Plaintiffs have paid the aggregate amount of $30,000 towards the "Existing Judgments")

WHEREAS, following a hearing on March 14, 2016 on Plaintiffs' motion for an order of contempt against

---

Stipulation for Entry of Judgment



2

Defendants, the Court took the matter under submission and ordered the parties to mediate the issues in Plaintiffs' motion for contempt; and

WHEREAS, having mediated the issues raised in Plaintiffs' motion for contempt, the parties now wish to settle the issues therein and to resolve all other amounts owed by Defendants to Plaintiffs as of the date of this Stipulation, including the Existing Judgments, as a result of any prior orders for costs and attorneys' fees and any potential award as a result of Plaintiffs' November 30, 2015 contempt motion and incorporate any and all amounts due to Plaintiffs from Defendants therefor in this New Judgment.

NOW THEREFORE, IT IS HEREBY STIPULATED by and between Plaintiffs, on the one hand, and Defendants, on the other, as follows:

1. Defendants agree and stipulate that a new judgment ("New Judgment") shall be entered in favor of Plaintiffs and against Defendants in the in the amount of $150,000 without any offset or reduction in respect of any payments made prior to the date hereof in respect of the Existing Judgments; provided, however, that the New Judgment shall be subject, at the option of Defendants, to payment in full in the reduced amount of $135,000 provided such sum is paid on or before October 31, 2016.

2. The parties agree that the Existing Judgments are superseded by the New Judgment.

3. The New Judgment shall bear no interest and be payable in installments of $5,000 per month with the first payment due on November 12, 2016 and each successive payment due on the 12th day of each month thereafter until the remaining balance is paid in full.

4. All payments shall be made c/o Shenkman & Hughes PC Client Trust Account. Defendants shall

---

Stipulation for Entry of Judgment

3



have a five (5) day grace period on the due date of such payments.

5. The New Judgment shall be secured by the Security Agreement a copy of which is attached hereto.

6. In the event and only in the event of a default in payment hereunder, the entire then remaining balance owed by Defendants on the New Judgment as of the default shall be immediately due and payable and Plaintiffs shall be entitled to foreclose on the security subject to the Security Agreement, and take any other remedies available to them at law or in equity to collect the then remaining balance of the Judgment.

7. This Stipulation and the Judgment is intended to compromise and supersede all prior monetary awards against Defendants in this Action and also resolve Plaintiffs' pending motion for civil contempt and any attorneys' fees potentially due in connection therewith or pursuant to the Settlement Agreement pertaining thereto; provided, however, that the terms of the Settlement Agreement incorporated in the Court's August 6, 2014 dismissal order [Dkt. Nos. 89, 90] and the non-monetary terms of the Court's August 7, 2015 Order [Dkt. No. 188] shall remain in full force and effect.

8. Of the total judgment amount specified herein, $55,755 corresponds to contempt sanctions, which are not compensation for any pecuniary loss but are rather imposed to uphold the dignity of the Court.

9. Within 30 days of Defendants' full payment of all amounts owed under the New Judgment, Plaintiffs shall request the dismissal of its Opposition proceeding in the Trademark Trial and Appeals Board relating to the mark "Cloud Life" with each side to bear their own attorneys' fees and costs in connection with that proceeding.

10. The parties hereby stipulate and request that the Court retain jurisdiction to enforce the terms of this Stipulation, and agree that the Court's retaining jurisdiction to enforce this Stipulation shall be a condition precedent to this Stipulation.

IT IS SO STIPULATED:

By _____

Vahan Eksouzian, on behalf of himself, Cloud V Enterprises and Vape A Cloud, Inc.

Dated: October 14, 2016

By _____

Brett Albanese, on behalf of himself, Full Circle Enterprises, LLC and Cloud Vapez, Inc.

Dated: October 14, 2016

IT IS SO ORDERED:

_____                    Dated: _____

Hon. Philip S. Gutierrez
United States District Judge

---

Stipulation for Entry of Judgment



EXHIBIT 1

# SECURITY AGREEMENT

Each of Brett Albanese ("Albanese"), Cloud Vapez, Inc. ("CVI"), and Full Circle Enterprises, LLC ("Full Circle") and any and all successors in interest to them, (collectively "Debtor"), jointly and severally, and Vahan Eksouzian, Cloud V. Enterprises, and Vape A Cloud, Inc. (collectively, "Secured Party") agree, effective October 14, 2016, as follows:

**1. Background and Purpose.**

1.1. Debtor and Secured Party are parties or successors-in-interest to parties to a lawsuit in the United Stated District Court for the Central District of California, Case No. 2:13-cv-00728-PSG (MANx), and are parties or successors-in-interest to parties to a settlement agreement dated on or about September 12, 2016 (the "Settlement Agreement") concerning certain sanctions, expenses, damages and fees payable by the individuals comprising the Debtor.

1.2. To secure Debtor's obligations under the Settlement Agreement, and Debtor's joint and several obligations under this Security Agreement, the individuals collectively referred to as the Debtor herein have jointly and severally agreed to grant Secured Party a security interest as provided below.

1.3. The parties desire to set forth more fully the terms of their agreement.

**2. Joint and Several Liability.** For the purposes of this Security Agreement, the term "Debtor" shall be construed and deemed to apply and refer both individually and jointly to the individuals and entities named collectively as Debtor so as to confer both joint and several liability on each of those individuals and entities under this Security Agreement.

**3. Grant of Security Interest.** To secure Debtor's joint and several Obligations (as defined in Paragraph 3 below), each of the individuals and entities comprising the Debtor jointly and severally grants to Secured Party a security interest in the Collateral (as defined in Paragraph 4 below).

**4. Obligations.** For purposes of this Security Agreement, "Obligations" means any and all debts, obligations, and liabilities of Debtor to Secured Party arising out of, or relating in any way to the Settlement Agreement, and any obligations of Debtor to Secured Party pursuant to this Security Agreement, whether existing or arising after the date of this Security Agreement; whether jointly or severally, whether voluntary or involuntary; whether jointly



owned with others; whether direct or indirect; or whether absolute or contingent; and whether or not from time to time increased, decreased, extinguished, created, or incurred.

**5. Collateral.** For purposes of this Agreement, "Collateral" means:

(a)     All accounts, accounts receivable, contract rights, and general intangibles, including, without limitation, all forms of payment, all present and future incomes, rents, revenues, issues and profits, goodwill, licenses and license rights, bailment or leasehold interests, whether as lessor or lessee, all choses in action and recoveries for any loss in value of the real estate of Debtor or items of property described in this Agreement, rights in and to security agreements and other contracts or assignments providing security to Debtor, book debts, credits, indemnities, warranties or guarantees payable to Debtor on loss or damage of property, inventions, designs, design registrations, trademarks, trade styles, trade names, know-how, powers, privileges, logos, franchise rights, payments in kind, advertising and promotional materials, trade secrets, patents, patent rights, copyrights, patent applications, tax refunds, customer lists, business and accounting records, including all ledger account cards, computer tapes and disks and other computer information, in all cases whether now owned or hereafter created or acquired by Debtor or in which Debtor may now have or may after the date of this Agreement acquire an interest;

(b)     All inventory, including, without limitation, all goods held for sale or lease, finished goods, merchandise, parts and supplies, of every kind and description, whether now owned or acquired by Debtor after the date of this Agreement, or in which Debtor may now have or may after the date of this Agreement acquire an interest, including, without limitation, inventory temporarily out of Debtor's custody or possession and any returns or repossessions on any sales or accounts;

(c)     All goods, including, without limitation, equipment, machinery, materials, furniture, furnishings, engines, appliances, fixtures, tools, parts, supplies, and vehicles of every kind and description, whether now owned or acquired by Debtor after the date of this Agreement or delivered to the real property of Debtor, or in which Debtor may now have or may after the date of this Agreement acquire an interest, and all additions, accessions, replacements, substitutions, and improvements to such goods and wherever located;

(d) All documents, documents of title, deposit accounts, negotiable and nonnegotiable instruments, shares, stocks, bonds, debentures, securities, moneys, sources of money, uncalled capital, letters of credit, investment property, and chattel paper whether now owned or acquired after the date of this Agreement by Debtor; and

(e) All proceeds and products of any of the personal property described above, in any form, including, without limitation, proceeds of any insurance relating to such collateral or fire and builder's risk insurance and unrenewed insurance premiums; proceeds consisting of any of the above types of collateral; all awards made in eminent domain proceedings or purchased in lieu of such eminent domain proceedings; proceeds of any noncommercial tort cause of action in existence, now or after the date of this Agreement; and all replacements, substitutions, renewals, returns, additions, accessions, rents, royalties, issues, documents of ownership, and receipts for any of the foregoing.

**6. Representations and Warranties.** As a material inducement to Secured Party under this Security Agreement and the Settlement Agreement, Debtor represents and warrants that the following are and shall remain true and correct:

**6.1. Title.** Debtor is the owner of all right, title, and interest in the Collateral free and clear of all liens, encumbrances, and security interests, except the security interest created by this Agreement.

**6.2. Truth.** All information that Debtor has provided to Secured Party concerning the Collateral is true and correct.

**6.3. No Defenses.** No defenses, offsets, claims, or counterclaims exist against Debtor that may be asserted against Secured Party in any proceeding to enforce Secured Party's rights in the Collateral.

**6.4. No Conflict.** The execution, delivery, and performance of this Security Agreement by Debtor is not in violation of any applicable law or regulation or contractual obligation of Debtor.

**6.5. First Priority Lien.** Except as explicitly and specifically stated herein, the liens granted to Secured Party under this Agreement will constitute a first priority

3



lien on the Collateral on the filing of a U.C.C.-1 Financing Statement and Debtor's grant of such lien to Secured Party does not constitute a fraudulent conveyance under any applicable law. Notwithstanding anything to the contrary herein, Debtor may encumber the proceeds of any future lawsuit to secure the services of attorney(s) in an amount of a reasonable attorneys' fee, and such security interest in the proceeds of such a lawsuit shall be superior to any security interest in the proceeds of such a lawsuit created herein. Furthermore, Debtor may encumber the Collateral in the ordinary course of business, such that a third-party obtains a lien on the Collateral superior to that of Secured Party, if, and only if, Secured Party receives, as part of any such transaction between Debtor and said third-party, 60% of the then-remaining balance under the Settlement Agreement, or $100,000, whichever is less.

**6.6. Due Authorization.** Debtor has been duly authorized to execute and deliver this Agreement, which is a valid and binding obligation of Debtor.

## 7. Covenants of Debtor.

**7.1. Protection of Security Interest.** Contemporaneously with the execution of this Agreement, Debtor consents to Secured Party filing and recording U.C.C.-1 Financing Statements to enable Secured Party to perfect Secured Party's security interest in the Collateral. Debtor agrees also to execute, file, and record such other statements, notices, and agreements, take such action and obtain such certificates and documents, in accordance with all applicable laws, statutes, and regulations as may be necessary or advisable to perfect, evidence, and continue Secured Party's security interest in the Collateral and Debtor will provide Secured Party all necessary further assurances upon its request.

**7.2. Transactions Involving Collateral.** Except as specified in Section 6.5, above, Debtor shall not, without the prior written consent of Secured Party, (a) sell, offer to sell, or otherwise transfer the Collateral except in the ordinary course of business, or (b) pledge, mortgage, encumber, or otherwise permit the Collateral to be subject to any lien, security interest, or charge, other than the security interest created by this Agreement.

**7.3. Compliance with Laws.** Debtor shall comply with all laws, statutes, and regulations pertaining to the Collateral.

4   BA

**7.4. Taxes, Assessments, and Liens.** Debtor shall pay when due all taxes, assessments, and liens with regard to the Collateral. Debtor may withhold any such payment or may elect to contest any lien if Debtor is conducting appropriate proceedings in good faith to contest the obligation to pay and so long as Secured Party's interest is not jeopardized.

**7.5 Protection of Collateral.** Debtor shall do all acts (other than acts that are required to be done by the Secured Party) that may be reasonably necessary to maintain, preserve, protect, and defend the Collateral, including Debtor's title thereto, and the security interest of the Secured Party therein.

**7.6 Change of Address or Name.** Until the Obligations to Secured Party are satisfied in full, Debtor shall cause its legal name, location, mailing address, type of organization, jurisdiction of organization, chief executive office, trade name(s) at all times to be true and correct and to not change any of the foregoing without written consent of the Secured Party (if such change is to a location outside of the United States) or prior to giving at least ten (10) Business Days' written notice to the Secured Party.

**7.7 Prevention of Waste.** Debtor shall keep the Collateral in good condition and repair and not to cause or permit any waste or unusual or unreasonable depreciation of the Collateral and not to use the Collateral in violation of any statute, ordinance or policy of insurance relating thereto;

**7.9 Books and Records.** Debtor shall keep and maintain at the locations referred to below such books and records with respect to the Collateral and with respect to the general business of the Debtor as Secured Party may from time to time prescribe in order to enable Secured Party to audit same. **7.10 Right of Inspection.** Provided Secured Party shall have declared an event of default hereunder, Debtor shall allow, at all reasonable times, and from time to time, without the necessity of any prior notice or demand, Secured Party by or through any of its officers, agents, attorneys, accountants or other representative, to examine or inspect the Collateral wherever the same may be located and to examine, inspect and make extracts from or copies of the Debtor's books and records respecting any or all of the Collateral.



**8. Authorized Action by Secured Party.** Provided Secured Party shall have declared an event of default hereunder, Debtor irrevocably appoints Secured Party as Debtor's attorney in fact to do any act that Debtor is obligated to do pursuant to this Security Agreement to preserve or protect the Collateral and to preserve, protect, or establish Secured Party's lien on the Collateral. Debtor further irrevocably appoints Secured Party to exercise such rights and powers as Debtor might exercise with respect to the Collateral following an Event of Default, as defined below. These powers shall include without limitation the right to:

(a) Collect by legal proceedings or otherwise, and endorse, receive, and receipt all dividends, interest, payments, proceeds, and other sums and property now or after the date of this Agreement payable on account of the Collateral,

(b) Transfer the Collateral to Secured Party's own or Secured Party's nominee's name,

(c) Make any compromise or settlement and take any action Secured Party deems advisable with respect to the Collateral. Debtor agrees to reimburse Secured Party on demand for any costs and expenses, including without limitation attorney's fees, which Secured Party may incur while acting as Debtor's attorney in fact under this Agreement, all of which costs and expenses are included in the Obligations secured by this Agreement. Secured Party shall have no obligation to act pursuant to this paragraph and shall not be required to make any presentment, demand, or protest, or give any notice or take any action to preserve any rights against any other person in connection with the Collateral; and

(d) At any time, without presentment, or demand, and without affecting or impairing in any way the rights of the Secured Party with respect to the Collateral, the obligations of the Debtor hereunder or the Obligations, the Secured Party may, but shall not be obligated to and shall incur no liability to the Debtor or any third party for failure to, take any action that the Debtor is obligated by this Security Agreement to do and to exercise such rights and powers as the Debtor might exercise with respect to the Collateral, and the Debtor hereby irrevocably appoints the Secured Party as its attorney-in-fact to exercise such rights and powers. The Debtor agrees to reimburse the Secured Party upon demand for any costs and expenses, including, without limitation, reasonable attorney's fees, the Secured Party may incur



while acting as the Debtor's attorney-in-fact hereunder, all of which costs and expenses are included in the Obligations secured hereby.

## 9. Defaults and Remedies.

**9.1. Event of Default.** Any of the following events or conditions shall constitute an Event of Default by Debtor under this Agreement:

(a)   Failure to make any payment in accordance with the terms of the Settlement Agreement;

(b)   Default in the performance of any Obligations or breach of any agreement, representation, or warranty contained in this Security Agreement;

(c)   Any levy or proceeding against the Collateral or Debtor's interest in the Collateral, except if Debtor is conducting appropriate proceedings in good faith to contest the levy or proceeding; or

(d)   The filing of a petition by or against Debtor under the provisions of the Bankruptcy Code.

Notwithstanding anything herein to the contrary, minor immaterial breaches by Debtor, excluding failure to make any payment in accordance with the terms of the Settlement Agreement, that are cured promptly upon notice from Secured Party, shall not constitute an Event of Default.

**9.2. Remedies.** On the occurrence of an Event of Default, Secured Party:

(a)   Shall have and may exercise all rights and remedies accorded to Secured Party by the California Uniform Commercial Code;

(b)   May declare all unperformed Obligations, in whole or in part, of Debtor immediately due and payable without demand or notice;

(c)   May require Debtor to take any and all action necessary to make the Collateral available to Secured Party;

7



(d) Shall, at Secured Party's election, be deemed an assignee of all of Debtor's accounts receivables and any other obligations to pay money from any person indebted to Secured Party, and Secured Party may, but is not obligated to, notify Debtor's account debtors to pay sums otherwise due to the Debtor directly to the Secured Party as provided by the California Commercial Code.

**9.3. Remedies Cumulative.** All of Secured Party's rights and remedies, whether evidenced by this Security Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Secured Party to pursue any remedy shall not exclude pursuit of any other remedy.

**10. Waiver of Hearing.** Debtor expressly waives any constitutional or other right to a judicial hearing prior to the time Secured Party takes possession or disposes of the Collateral on an Event of Default as provided in Paragraph 9 above.

**11. Waiver.** Secured Party shall not be deemed to have waived any rights under this Security Agreement unless such waiver is in writing and signed by Secured Party. No delay or omission on the part of Secured Party in exercising any right shall operate as a waiver of such right or any other right.

**12. Additional Documentation; Cooperation.** Each party shall, on the request of the other, execute, acknowledge, and deliver to the other any instrument that may be required to accomplish the intent of this Agreement. Each party agrees to cooperate to effectuate the intent of this Security Agreement and shall take all appropriate action necessary or useful in doing so.

**13. Miscellaneous.**

**13.1. Successors and Assigns.** Subject to the provisions otherwise contained in this Security Agreement, this Security Agreement shall inure to the benefit of and be binding on the successors and assigns of the respective parties.

**13.2. Notices.** Any notice under this Security Agreement shall be in writing, and any written notice or other document shall be deemed to have been duly given (a) on the date of personal service on the parties, (b) on the third business day after mailing, if the document is mailed by registered or certified mail, (c) one day after being sent



by professional or overnight courier or messenger service guaranteeing one day delivery, with receipt confirmed by the courier, or (d) on the date of transmission if sent by telegram, telex, telecopy, or other means of electronic transmission resulting in written copies, with receipt confirmed. Any such notice shall be delivered or addressed to the parties at the addresses set forth below or at the most recent address specified by the addressee through written notice under this provision. Failure to conform to the requirement that mailings be done by registered or certified mail shall not defeat the effectiveness of notice actually received by the addressee.

**13.3. Amendment.** The provisions of this Security Agreement may be modified at any time by written agreement of the parties. Any such agreement made after the date of this Security Agreement shall be ineffective to modify this Security Agreement in any respect unless in writing and signed by Debtor and Secured Party.

**13.4. Attorney Fees; Prejudgment Interest.** If the services of an attorney are required by Secured Party to secure the performance of this Security Agreement or otherwise on the breach or default of this Security Agreement, or if any judicial remedy or arbitration is necessary to enforce or interpret any provision of this Security Agreement or the rights and duties of any person in relation to this Agreement, Secured Party shall be entitled to reasonable attorney's fees, costs, and other expenses, in addition to any other relief to which Secured Party may be entitled. Any award of damages following judicial remedy or arbitration as a result of the breach of this Agreement or any of its provisions shall include an award of prejudgment interest from the date of the breach at the maximum amount of interest allowed by law.

**13.5. Post-Judgment Attorney Fees.** If the services of an attorney are required by any party to enforce a judgment rendered in connection with this Security Agreement, the judgment creditor shall be entitled to reasonable attorney's fees, costs, and other expenses, and such fees, costs, and expenses shall be recoverable as a separate item. This provision shall be severable from all other provisions of this Security Agreement, shall survive any judgment, and shall not be deemed merged into the judgment.

**13.6. Captions.** All paragraph captions are for reference only and shall not be considered in construing this Security Agreement.



**13.7. Severability.** If any provision of this Security Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the Security Agreement that can be given effect without the invalid provision shall continue in full force and effect and shall in no way be impaired or invalidated.

**13.8. Governing Law.** The rights and obligations of the parties and the interpretation and performance of this Security Agreement shall be governed by the law of California, excluding its conflict of laws rules.

**13.9. Venue.** Debtor agrees that any actions arising under this Security Agreement shall be heard and resolved in the courts in Los Angeles County, California.

**13.10. Entire Agreement.** This document and its exhibits constitute the entire agreement between the parties, all oral agreements being merged in this Security Agreement, and supersede all prior representations. There are no representations, agreements, arrangements, or understandings, oral or written, between or among the parties relating to the subject matter of this Security Agreement that are not fully expressed in this Security Agreement or its exhibits.

SECURED PARTY

By: _____
Vahan Eksouzian, on behalf of himself, Cloud V Enterprises and Vape A Cloud, Inc.

DEBTOR

By: _____  10-14-16
Brett Albanese, on behalf of himself, Full Circle Enterprises, LLC and Cloud Vapez, Inc.

10

BA